**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Nancy Douglas, as Trustee of the and on behalf of the William Strawn Douglas Supplemental Need Trust,

Plaintiff,

v.

The State of Minnesota, Minnesota Department of Veterans Affairs, United States of America, United States Department of Veterans Affairs, Anthony Principi, Sued as Anthony J. Principi, Secretary of the United States Department of Veterans Affairs, Lillian R. Dambowy, as Federal Payee, and Jeffrey L. Olson, as Commissioner of the Minnesota Department of Veterans Affairs,

Defendants.

Civil No. 01-2361 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Edward A. Zimmerman, Esq., The Business Lawyers, 201 Travelers Trail West, Suite 11, Burnsville, MN 55337, counsel for Plaintiffs.

Richard L. Varco, Jr., Assistant Attorney General, Office of the Minnesota Attorney General, 525 Park Street, St. Paul, MN 55103-2106, and Noah A. Cashman, Assistant Attorney General, Office of the Minnesota Attorney General, 445 Minnesota Street, St. Paul, MN 55101, counsel for Defendants State of Minnesota, Minnesota Department of Veterans Affairs, Lillian R. Dambowy, and Jeffrey L. Olson.

Joan Humes, Assistant United States Attorney, 600 U.S. Courthouse, 300 Fourth Street South, Minneapolis, MN 55415, counsel for the United States of America, the United States Department of Veteran Affairs, and Anthony Principi.

---

FEB 2 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 22, 2002, pursuant to Plaintiff's motion for a preliminary injunction. For the reasons stated below, the Plaintiff's motion is denied.

## Background

William Strawn Douglas ("Mr. Douglas") is involuntarily confined in a psychiatric facility operated by the State of Minnesota. Mr. Douglas, a veteran, applied for disability benefits from the U. S. Veteran's Administration ("the VA"). The VA determined that Mr. Douglas was entitled to benefits, specifically a monthly payment of $2,107 and a back payment of $63,049. The VA further determined that Mr. Douglas was not competent to manage his financial affairs. Accordingly, the VA designated Nancy Douglas ("Ms. Douglas"), Mr. Douglas's mother, as a federal payee, pursuant to 38 U.S.C. § 5502.

Shortly thereafter, the Minnesota Department of Human Services–the agency which oversees state psychiatric facilities–informed Ms. Douglas that it would be billing her, in her capacity as federal payee, for a portion of the expenses incurred by the State for Mr. Douglas's past care. The agency further informed Ms. Douglas that it would be billing her, in her capacity as federal payee, a monthly amount for Mr. Douglas's on-going care.

Ms. Douglas determined that making these payments would not be in the best interests of Mr. Douglas, that under federal law the State could not attempt to compel reimbursement through legal process, and that Mr. Douglas would be better served by using the money to pay for college courses and other expenses related to him moving ahead with his life. Ms. Douglas placed the money from the VA in the William Strawn Douglas Supplemental Needs Trust ("the

Trust"), a trust established pursuant to Minn. Stat. § 501B.89. Ms. Douglas is designated as the trustee of the Trust.

Pursuant to the terms of the Trust, Ms. Douglas, as trustee, could determine how and why the benefits would be spent. Such determinations were dedicated to "her sole discretion." The Trust specifically provided that "[a]ll of the powers and discretion granted herein to the trustee shall be exercised in the sole or absolute discretion of the trustee."

The VA advised Ms. Douglas that she should pay the State of Minnesota the money the State was requesting. Ms. Douglas again determined that such a move would not be in the best interests of the veteran.

Ms. Douglas did apply $2,715.17 of the benefits awarded to her own expenses incurred on her son's behalf, specifically for legal expenses incurred in establishing the Trust. But she continued to maintain that reimbursing the State for Mr. Douglas's past care would not be in the veteran's best interest.

The VA notified Ms. Douglas that it was rescinding her appointment as federal payee for Mr. Douglas and appointing a successor. In its notification, the VA noted that Ms. Douglas had placed the benefits in a trust which effectively removed them from the VA's oversight. Moreover, she had made a disbursement of funds–the $2,715.17–without the VA's approval; the rules pertaining to federal payees require payees to obtain prior approval from the VA for any non-routine expenditures over $500.

The VA appointed the Minnesota Department of Veteran's Affairs as the successor federal payee of Mr. Douglas's benefits. The benefits were removed from the Trust and transferred to the control of the Minnesota Department of Veteran's Affairs. The Minnesota

Department of Veteran's Affairs, on the advice of and at the direction of the VA, determined that it would reimburse the State of Minnesota for Mr. Douglas's past care.

Ms. Douglas brought this action as trustee of the Trust seeking return of the money to the Trust so that it may be used for Mr. Douglas's legal fees and education.

**Discussion**

**A. Standard of Review**

Under Eighth Circuit precedent, a temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**B. Likelihood of Success on the Merits**

The Court has reviewed the record and the arguments of the parties and determines that the likelihood of Ms. Douglas succeeding on the merits of this case are almost a nullity.

First, the Court notes that there is no apparent limitation on the authority of the VA to assign or reassign federal payees except that such decisions must be made in the best interests of the veteran. 38 U.S.C. § 5502. Ms. Douglas has standing only to challenge her removal as federal payee. Ms. Douglas clearly violated the obligations of a federal payee and overstepped

her authority, first by reimbursing herself for her own expenses and second by placing the money in a trust which effectively removed it from the VA's control. Ms. Douglas asserts that everything she did was in her son's best interests. While that almost certainly is the case, the fact remains that Ms. Douglas violated the rules under which federal payees must operate. The VA cannot function if it must determine whether a rule violation was well-intentioned or not; the very actions Ms. Douglas took, with the intent to help her son, could have been taken for nefarious purposes, and the VA has no reliable way of distinguishing between the two.

Ms. Douglas also argues that the Trust did not place the funds beyond the supervision of the VA because Ms. Douglas was bound by her obligations as a federal payee to use the money only in a manner consistent with the VA's regulations. However, on its face, the Trust gives Ms. Douglas significantly more authority. Arguably, by "laundering" the money through the Trust, Ms. Douglas could obtain far more authority than she would have as a federal payee. In other words, what she could not do as a federal payee, she *could* do acting as Trustee.

Again, the VA need not explain to the Court its rationale for removing Ms. Douglas as federal payee; that decision is committed to the VA's discretion so long as its decision to remove Ms. Douglas was in Mr. Douglas's best interests.

Once we establish that Ms. Douglas has no legal right to retain control over the money as federal payee, then she loses all standing to challenge what happens to the benefits. Ms. Douglas has no standing to challenge the VA's decision that Mr. Douglas needs a federal payee, the VA's decision of who to appoint as that payee, or what that payee and the VA decide to do with the benefits. All of these issues–the competency determination, the payee designation, and the disposition of the benefits–are issues which may be challenged by William Strawn Douglas, but

Ms. Douglas cannot challenge those issues, whether as Mr. Douglas's mother, as a former federal payee, or as a trustee.

The Court understands that Mr. Douglas is reluctant to pursue litigation on his own. While the Court is sympathetic to Mr. Douglas's concerns, the Court cannot overlook basic principles of standing simply because Mr. Douglas would prefer that his mother make the challenges he, himself, is unwilling to make.

**C. Irreparable Harm**

Even if the Court were to determine that Ms. Douglas has a likelihood of success on the merits, she has not demonstrated the threat of irreparable harm which is necessary to provide the extreme remedy of a preliminary injunction. If Ms. Douglas ultimately prevails and the money has already been transferred to the State coffers, Ms. Douglas may seek money damages.

Ms. Douglas alleges that Mr. Douglas will endure irreparable harm because any delay in his access to the monies at issue will delay his ability to pursue his release from involuntary civil commitment. In other words, he plans to use the money and he will not have the use of the money *now*. However, the harm Mr. Douglas will allegedly endure–a period of unnecessary and avoidable commitment to a mental health facility–will only come to pass if there is a legitimate possibility that, with the funds, he could secure his release. Such harm is entirely too speculative to support a motion for temporary injunction. Moreover, the other harms alleged–loss of opportunities to take classes and pursue other "enriching" endeavors while committed–are not the sort of harms which would generally justify the extraordinary remedy of injunctive relief. Every time a litigant sues a party for money, that litigant could make the claim that they could use the money now, that they will lose opportunities if they have to wait for financial recompense. Such a claim is not sufficient to warrant injunctive relief.

**D. Balance of Harms and Public Interest**

Given that Ms. Douglas has such a small likelihood of success on the merits and that she has failed to adequately allege irreparable harm, the Court need not spend a great deal of time considering the balance of harms or the public interest.

With respect to the balance of harms, it is sufficient to note that if Ms. Douglas gets the relief she is requesting–return of the funds so that they may be spent on a variety of activities and endeavors for Mr. Douglas–the money, or some substantial portion thereof, will be gone by the time the case is resolved. If the Court grants the injunctive relief sought, it is unlikely that the Court will be able to "undo" its action after a determination on the merits. In contrast, if Ms. Douglas ultimately obtains a money judgment, the Defendants will almost certainly be able to make her, and the Trust, whole.

As for the public interest, the interest of the public at large favors a psychiatric inmate contributing to the cost of his care, so that the full burden of that care does not inure to the public fisc. Of course, the public also has an interest in protecting veterans, but it is unclear whether that interest weighs in favor of the Defendants' position or the Plaintiff's position. Again, the Court has no doubt that *this* particular federal payee, Ms. Douglas, was motivated by nothing but good intentions, but other federal payees may bend the rules to suit their own purposes rather than the veterans'. The Court must consider the interests served by the policy of removing federal payees who do not abide by the rules, and that policy would, overall, serve the interests of the veteran beneficiaries.

**E. Conclusion**

The Court again notes that nothing in this Order reflects upon the propriety of the VA's designation of a state agency as federal payee, the propriety of the VA's determination that

Mr. Douglas requires a federal payee, or the ultimate decision that it would be in Mr. Douglas's best interests to reimburse the State for his past care. Those issues must be addressed in the context of litigation or other action taken by Mr. Douglas himself. The Court's determination rests solely on the conclusion that *this Plaintiff* has little likelihood of succeeding on the merits of these claims.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Temporary Restraining Order (Doc. No. 2) is **DENIED**.

Dated: February 25, 2002

DONOVAN W. FRANK
Judge of United States District Court